NOT DESIGNATED FOR PUBLICATION

No. 122,742

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TROY A. ROBINSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed December 17, 2021. Affirmed.

*Jonathan B. Phelps*, of Phelps-Chartered, of Topeka, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and ISHERWOOD, JJ.

PER CURIAM: Troy A. Robinson appeals from the district court's denial of his K.S.A. 60-1507 motion. On appeal, Robinson claims the district court erred in denying the motion without conducting an evidentiary hearing. Robinson asserts his trial counsel was ineffective for: (1) failing to request a second competency evaluation; and (2) failing to present a mental disease or defect defense. The sole issue before us is whether the district court erred in not granting Robinson's request for an evidentiary hearing. For the reasons set forth in this opinion, we find that the district court appropriately resolved Robinson's K.S.A. 60-1507 motion without an evidentiary hearing. Thus, we affirm the district court.

1

On December 20, 2012, Robinson was arrested for premeditated first-degree murder. Robinson's arrest occurred after he told his mother that he had stabbed the victim in the neck, and his mother called the police. After a trial on June 24-30, 2014, a jury convicted Robinson of premeditated first-degree murder, aggravated burglary, and misdemeanor theft. The facts leading to the charges and convictions are set out in *State v. Robinson*, 306 Kan. 431, 432-35, 394 P.3d 868 (2017).

After the district court denied several posttrial motions filed by Robinson, the jury recommended that he serve a sentence of life imprisonment with parole eligibility after 50 years. The district court then sentenced Robinson to a hard 50 life sentence for first-degree murder and imposed consecutive sentences of 34 months for aggravated burglary and 12 months for theft. Robinson's convictions and sentence were subsequently affirmed by the Kansas Supreme Court on direct appeal and a mandate was issued on June 27, 2017. 306 Kan. at 450.

On February 5, 2018, Robinson filed a pro se K.S.A. 60-1507 motion, which is the subject of this appeal. In the motion, Robinson asserted numerous allegations of error. In doing so, he focused on alleged instances of ineffective assistance of counsel. Robinson attached a letter dated January 4, 2018, to the K.S.A. 60-1507 motion. In the letter, his trial attorney, Julia Spainhour, gave him advice regarding issues that he could raise in his K.S.A. 60-1507 motion. The letter appears to have been written by Spainhour in response to questions posed to her by Robinson.

On March 7, 2018, the district court appointed another attorney to represent Robinson in the proceedings on the K.S.A. 60-1507 motion. Several months later, Robinson's new attorney filed an addendum to the K.S.A. 60-1507 motion after interviewing Spainhour. On February 26, 2019, the State asked the district court to

summarily deny Robinson's K.S.A. 60-1507 motion. Robinson filed a reply to the State's request to deny the motion on January 31, 2020.

On March 27, 2020, after some delays unrelated to this appeal, the district court judge—who also presided over Robinson's jury trial—summarily denied Robinson's K.S.A. 60-1507 motion in a comprehensive 17-page memorandum decision and order. The district court found that nine of Robinson's allegations were addressed in his direct appeal or had been waived because they should have been raised in the appeal to the Kansas Supreme Court. In ruling on the issues, the district court specifically addressed Spainhour's letter in which she suggested that her representation of Robinson was ineffective.

Specifically, the district court found that the letter contained mere conclusory allegations without any factual support:

> "[T]rial counsel's letter does not provide factual details to support her statements. For example, the letter states, 'trial counsel was ineffective in failing to negotiate a plea bargain in the case,' but provides no further explanation. Trial counsel may genuinely believe she was ineffective, however, her admissions via a letter to Robinson are not dispositive."

The district court also examined the record regarding Robinson's allegations regarding his competency and his capability to form the specific intent required for first-degree murder. In addition, the district court reviewed the record regarding his allegations regarding plea negotiations. Regarding Robinson's claim that trial counsel was ineffective in failing to raise Robinson's competency as an issue, the district court found that Robinson failed to include any evidence that he was incompetent or unable to understanding the proceedings. In addition, the district court ruled that the evidence in the record supported Robinson's competence. As such, the district court concluded that his claims "[did] not meet the first prong of the test regarding ineffectiveness of counsel."

Next, the district court found that trial counsel was not ineffective for failing to pursue a defense of lack of mental state to commit first-degree murder. In examining this issue, the district court pointed to evidence in the record that showed that trial counsel investigated the possibility of a lack of mental state defense, but she concluded that there was no evidence that such a defense would have been appropriate in this case. In his K.S.A. 60-1507 motion, Robinson did not provide any evidence to the contrary outside of his conclusory allegation that trial counsel should have pursued this defense strategy. Accordingly, the district court found that Robinson's claims did not meet the first prong of the test regarding ineffective assistance of counsel.

Finally, the district court ruled that trial counsel was not ineffective for failing to negotiate a plea or for failing to inform Robinson of the potential plea offers or the maximum penalties for the charges against him. Once again, the district court pointed to specific evidence in the record showing that Robinson was involved in plea negotiations and that he was aware of the maximum penalty that he was facing. Finding direct evidence contradicting Robinson's claims, the district court found that Robinson failed to allege facts to support a finding that trial counsel was ineffective in her role during plea negotiations.

Thereafter, Robinson filed a timely notice of appeal.

ANALYSIS

The only issue Robinson raises on appeal is whether the district court erred in summarily denying his K.S.A. 60-1507 motion without first conducting an evidentiary hearing. When considering a movant's K.S.A. 60-1507 motion, a district court has three available options. Here, the district court exercised the first option and summarily dismissed Robinson's motion. As a result, we conduct a de novo review to determine

4

whether the motion, files, and records of the case conclusively establish that the movant has no right to relief. *Breedlove v. State*, 310 Kan. 56, 59, 445 P.3d 1101 (2019).

To be entitled to relief under K.S.A. 60-1507, the movant—in this case Robinson—must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." K.S.A. 2020 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2021 Kan. S. Ct. R. 239) (preponderance burden).

Robinson filed his K.S.A. 60-1507 motion pro se and it was later supplemented by the attorney appointed by the district court to represent him in presenting his motion. Generally, pro se pleadings are to be liberally construed. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018).

> "Nevertheless, a pro se movant still bears the burden to allege facts sufficient to warrant a hearing on the motion, and 'mere conclusions of the defendant or movant are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record.' *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994)." *Mundy*, 307 Kan. at 304.

When a pro se movant offers only conclusory statements and incomplete facts, the movant presents no evidentiary basis to support the claims. 307 Kan. at 304.

A movant bears the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing. Specifically, the movant must make more than conclusory allegations and must state an evidentiary basis in support of the claims or such a basis must appear in the record. Once this burden is satisfied, the district court must grant an

5

evidentiary hearing unless the motion is successive or seeks similar relief to that previously sought. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

In deciding whether an evidentiary hearing must be held, the district court generally must accept the movant's factual allegations as set forth in the motion as true, but the factual allegations must be specific and not mere conclusions. *Skaggs v. State*, 59 Kan. App. 2d 121, 130-31, 479 P.3d 499 (2020), *rev. denied* 313 Kan. 1042 (2021); see *Mundy*, 307 Kan. at 304. It is error to deny a K.S.A. 60-1507 motion without a hearing where the motion alleges facts that do not appear in the original record that, if true, would entitle the movant to relief and the motion identifies readily available witnesses whose testimony would support such facts or other sources of evidence. *Beauclair v. State*, 308 Kan. 284, 296, 419 P.3d 1180 (2018); *Swenson v. State*, 284 Kan. 931, 939, 169 P.3d 298 (2007).

We first consider Robinson's claim that his trial counsel provided ineffective assistance of counsel by failing to sufficiently investigate and pursue a motion to determine Robinson's competency to stand trial and assist in his defense. A district court must set aside a movant's conviction if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." K.S.A. 2020 Supp. 60-1507(b). The right to effective counsel is embodied in the Sixth Amendment to the United States Constitution and "plays a crucial role in the adversarial system . . . ." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]); see *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 (1985) (adopting *Strickland*).

Ineffective assistance of counsel can be categorized into three subgroups, one of which is a claim that defense counsel's "performance was so deficient that the defendant was denied a fair trial." *Sola-Morales*, 300 Kan. at 882. That is, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

6

relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To meet his burden of establishing ineffective assistance of counsel, Robinson must establish that Spainhour's performance was both deficient and prejudicial. *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020).

Before trial counsel's assistance is determined to be so defective as to require reversal of a conviction, the movant must establish the well-known two-pronged test. First, the movant must establish that counsel's performance was constitutionally deficient. This requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed to the defendant by the Sixth Amendment to the United States Constitution. Second, the movant must establish that counsel's deficient performance prejudiced the defense, thus depriving the defendant of a fair trial. *Strickland*, 466 U.S. at 687; *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Adams*, 311 Kan. at 578.

The benchmark for judging an ineffective assistance of counsel claim is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Miller v. State*, 298 Kan. 921, Syl. ¶ 2, 318 P.3d 155 (2014). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Here, Robinson asserts his trial counsel was ineffective for failing to file a motion to determine his competency. The criminal trial of one who is incompetent violates due process. *Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353

(1992). In Kansas, a defendant is incompetent to stand trial when he or she is charged with a crime and, due to mental illness, is: (1) unable to understand the nature and purpose of the proceedings, or (2) cannot make or assist in making his or her defense. K.S.A. 22-3301(1)(a) and (b). See *State v. Stewart*, 306 Kan. 237, 251, 393 P.3d 1031 (2017).

A defendant is presumed competent to stand trial. *State v. Woods*, 301 Kan. 852, 860, 348 P.3d 583 (2015). However, the defense, trial counsel, the prosecutor, or the judge may raise the issue of a defendant's competency at any time between the filing of the charging document and before pronouncement of the sentence. If the district court judge has reason to believe that the defendant is incompetent to stand trial, the proceedings should be suspended, and a competency hearing must be held. K.S.A. 2020 Supp. 22-3302(1).

In this case, the district court ordered a competency evaluation at the request of Spainhour, which was performed by Dr. David Blakely on January 31, 2013. Dr. Blakely noted that Robinson had a long history of psychiatric difficulties, including multiple hospitalizations, cutting himself, and "suicidal acting out." He noted that Robinson's diagnoses include Attention Deficit and Hyperactivity Disorder (ADHD), Bipolar Disorder, and Borderline Personality Disorder. Dr. Blakely asked Robinson numerous questions about his understanding of the criminal proceedings, and he noted that Robinson had a "broad understanding of what the roles of the Court Officers are, and he knows what he is charged with."

Although Dr. Blakely acknowledged that Robinson struggled with significant mental illness, he concluded that he was competent to stand trial. He stated:

> "The first problem is competence. Despite the patient's significant psychiatric liabilities *he is competent. He understands the charges, and he can help in his own*

8

*defense*. He also has significant psychiatric liabilities. What to call them is a conundrum. Bipolar is descriptive but probably not entirely the issue here. He has a significantly disturbed upbringing, a significantly disturbed sense of self. He goes up and down in a hurry. He is quite labile in his emotions. He probably genuinely is ADHD in terms of being calmed down by Adderall, and he very likely needs other psychiatric medications and treatment, *so this is a man with significant psychiatric impairment who nonetheless is competent*." (Emphases added).

After this competency evaluation, Spainhour employed Dr. Mitchell Flesher to conduct a psychological evaluation. In a report dated March 9, 2014, Dr. Flesher provided a psychological evaluation detailing Robinson's past and current struggles with mental illness, but nothing in the report suggested that Robinson was not competent to stand trial or to understand the criminal proceedings.

Robinson argues that the record shows that he should be entitled to an evidentiary hearing based on Spainhour's failure to obtain a second competency evaluation prior to trial or sentencing. However, Robinson fails to support his suggestion that Spainhour was incompetent with any facts showing that his competency was at issue beyond the fact that he struggled with mental illness. In the K.S.A. 60-1507 motion, Robinson does not state that he was incompetent or that his competency had changed since Dr. Blakely's evaluation. Robinson does not suggest that Dr. Blakely's conclusion was wrong. In addition, Robinson does not point to anything in Dr. Flesher's evaluation—beyond the fact that he suffered from mental illness—to suggest that he was incompetent. Finally, Robinson does not point to anything in the record suggesting that he was incompetent.

Robinson points to Spainhour's letter suggesting that he raise the issue of ineffective assistance of counsel for failing to pursue a second competency evaluation and to his addendum indicating that Spainhour told his K.S.A. 60-1507 counsel that she was ineffective for failing to do so. However, neither the letter nor the addendum to the

9

original K.S.A. 60-1507 motion contain any facts supporting his claim that Spainhour was ineffective for failing to file a motion for a second competency evaluation.

Robinson merely points to his mental illness and the conclusory claims that Spainhour was ineffective for failing to file a motion seeking a second competency evaluation. However, mental illness by itself is not enough to show that a person is incompetent to stand trial. See *State v. Harkness*, 252 Kan. 510, 516, 847 P.2d 1191 (1993). Rather, the Kansas Legislature defined the phrase "incompetent to stand trial" in K.S.A. 22-3301(1). As set forth in that statute, a defendant is incompetent to stand trial if he or she "because of mental illness or defect is unable:  (a) To understand the nature and purpose of the proceedings against him; or (b) to make or assist in making his defense." K.S.A. 22-3301(1). Kansas caselaw provides further analysis, indicating the test to determine competency to stand trial is "'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 [1960]). See *Woods*, 301 Kan. at 857-58.

The defense, the State, or the judge can raise the question of whether a defendant lacks competency to stand trial. In this case, no one questioned Robinson's competency after the initial competency evaluation was complete. There is nothing in the record that suggests that Robinson was unable to understand the nature and purpose of the proceedings against him or that he was unable to assist in his defense. To the contrary, the record shows that he understood the proceedings and that he actively participated in his defense. There is no evidence in the record of any mental illness that affected Robinson's ability to understand the proceedings, assist in his defense, or that would have justified a second competency evaluation.

10

In contrast, in *State v. Zabala*, No. 107,408, 2013 WL 1010302 (Kan. App. 2013) (unpublished opinion), the movant provided the district court with specific factual allegations supporting his claim that an evidentiary hearing should have been granted regarding his claim that counsel was ineffective for failing to request a competency hearing before trial and again before sentencing. In that case, Zabala supported his claim of ineffective assistance of counsel with a specific assertion that his trial counsel would testify that he suspected Zabala was incompetent and sought advice from Zabala's mother regarding her son's mental stability. Zabala specifically alleged that trial counsel's testimony would show that

> "his suspicion was such to cause him to question the Petitioner's mother regarding the Petitioner's mental stability and that for whatever reason, [trial counsel] chose not to take additional steps to verify the Petitioner's competency given that Petitioner's mother had no expertise or experience to properly address [trial counsel's] concerns." 2013 WL 1010302, at *2.

The Court of Appeals panel noted that concerns about Zabala's competency were supported by the record. 2013 WL 1010302, at *2. The panel held that the district court erred in failing to hold an evidentiary hearing because Zabala had alleged facts that, if true, would entitle the movant to relief and that he had properly identified a readily available witness whose testimony would support such facts. 2013 WL 1010302, at *2. After remand, the district court held an evidentiary hearing on Zabala's claims and denied relief, and the denial was affirmed by another panel of this court. See *Zabala v. State*, No. 116,661, 2017 WL 4558558 (Kan. App. 2017) (unpublished opinion).

In this case, in contrast to *Zabala*, Robinson did not support his claim of ineffective assistance of counsel with specific facts as to the need for another competency evaluation. Robinson identified a witness in Spainhour, but he provided no facts or expected testimony. There is nothing in the district court's factual findings or in the record before us that addresses trial counsel's suspicions regarding her client's

11

competency issues. It is error to deny a K.S.A. 60-1507 hearing where the motion alleges facts that, if true, would entitle the movant to relief where the motion identifies readily available witnesses whose testimony would support such facts or other sources of evidence. *Swenson*, 284 Kan. at 939. But Robinson provides no facts supporting his claim.

Significantly, Robinson does not allege any facts in his original K.S.A. 60-1507 motion or in the addendum to the motion suggesting that he was incompetent or that Spainhour was incompetent for failing to pursue a second competency evaluation. Robinson makes no allegation that his competency status had changed or that his mental health had declined since the first competency evaluation. He merely claims that trial counsel was ineffective for failing to seek a second competency evaluation. Conclusory statements are not sufficient to warrant an evidentiary hearing. Rather, the K.S.A. 60-1507 motion must include specific factual allegations to support the claim. *Skaggs*, 59 Kan. App. 2d at 130-31. Without specific facts, there is nothing to support Robinson's request for an evidentiary hearing based on an allegation that Spainhour was ineffective for failing to request a competency evaluation.

Next, Robinson argues that the record shows that he should be entitled to an evidentiary hearing based on trial counsel's failure to identify an expert that could speak to Robinson's alleged inability to form the requisite intent required for first-degree murder and to file a notice of the defense of lack of mental state under K.S.A. 22-3219. K.S.A. 2020 Supp. 21-5209 provides: "It shall be a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the culpable mental state required as an element of the crime charged. Mental disease or defect is not otherwise a defense."

Robinson claims that trial counsel was ineffective for failing to pursue a defense that due to his mental disease or defect, he was unable to form the intent of premeditation

required for first-degree murder. See, e.g., *State v. McLinn*, 307 Kan. 307, 319-23, 409 P.3d 1 (2018). All capacity defenses in Kansas are valid only regarding the mens rea or specific intent of the crime. *State v. Pennington*, 281 Kan. 426, 434, 132 P.3d 902 (2006). A defendant cannot merely "'introduce evidence as to the existence of a mental disease or defect to litigate the defendant's mental condition in general.'" 281 Kan. at 434-35. Although the record supports Robinson's claim that he suffered from mental disease or defect, he provides no evidence that his mental disease or defect prevented him from forming the requisite intent to commit the crime. A review of the pleadings and supporting documentation show that Robinson's allegations are not supported by specific facts.

In addition, the record contains evidence that refutes Robinson's claim that Spainhour was ineffective because it shows that Spainhour considered and investigated the mental defect defense. At a hearing on November 8, 2013, Spainhour informed the district court that "there is significant documentation of mental health issues that I believe could result in the defense providing that notice of mental disease, but what I would tell the Court at this time is our investigative stage, we're still in the investigative stage." Spainhour indicated that she planned to make a catalog of information and consult with experts to determine the viability of such a defense. Approximately five weeks later, Spainhour informed the court that she had "no information at this time that would support" the defense of lack of mental state. In addition, in a subsequent motion hearing before trial, Spainhour sought a continuance to assist in preparing Robinson's defense regarding the sentencing phase. In that hearing, Spainhour confirmed that she had previously investigated a defense of lack of mental state, but that information regarding Robinson's mental state as it relates to the sentencing phase was different than her previous investigation. The record suggests that trial counsel investigated such a defense and concluded that it did not apply.

13

Although Dr. Blakely evaluated Robinson for competency and not specifically for lack of mental state, Dr. Blakely did not conclude that Robinson had a mental disease or defect that prevented him from forming the requisite intent to commit the crime. In addition, Spainhour employed Dr. Flesher to conduct a psychological report, and he provided that report to her on March 9, 2014. In that report, as previously noted, Dr. Flesher provided a detailed psychological evaluation documenting Robinson's past and current struggles with mental illness. However, Dr. Flesher did not suggest that Robinson lacked the mental state to commit the crime. Dr. Flesher concluded that Robinson impulsively lashed out in anger, and when that impulsive behavior ceased "Robinson was left with a sense of disbelief at his actions, as well as regret and resignation, with knowledge of the consequences that he would inevitably face." The report stated that Robinson acted impulsively, but Dr. Flesher did not suggest that Robinson lacked the mental state required to commit first-degree murder.

In the penalty phase of the jury trial, Dr. Flesher testified as to Robinson's mental health and his ability to control his conduct and make decisions in stressful situations. The following exchange took place:

"Q. Doctor, you're not suggesting that the defendant didn't know what he was doing that night, are you?
"A. No.
"Q. You're not suggesting that [Robinson] had absolutely no control over his actions, are you?
"A. No.
"Q. Or his choices, are you?
"A. No, I wouldn't suggest that."

Once again, we turn to the pro se K.S.A. 60-1507 motion, Spainhour's letter, and the addendum to the original motion. In that motion, Robinson alleges that he was under "extreme mental and emotional disturbance at the time of the crime" and that Spainhour

14

should have presented a "Mens Rea defense." He then states that he was found to have "mental disease," so there was enough evidence to pursue the defense. Robinson provides no facts as to how his mental disease or defect prevented him from forming the requisite mental intent nor does he provide details as to what Spainhour should have done to pursue that defense. In Spainhour's letter, she identifies issues for Robinson's appeal, including that trial counsel was ineffective in failing to "identify and prepare expert testimony" that Robinson's bipolar disorder prevented him from forming the requisite intent to commit first-degree murder. She also suggests that Robinson should raise the issue that trial counsel should have sought a continuance to obtain additional expert testimony about his mental conditions. However, Spainhour's letter does not include any facts to support her conclusory claim that trial counsel was ineffective in failing to pursue that defense. Without a factual basis for his claim, there is nothing to support Robinson's claim that Spainhour was ineffective.

Finally, K.S.A. 60-1507 counsel interviewed Spainhour on October 29, 2018, and he filed an addendum to the original K.S.A. 60-1507 motion. However, even though counsel should have known that his assertions of ineffective assistance of counsel must be supported by specific facts, he merely makes two conclusory assertions: (1) "Spainhour admitted that [Robinson] suffered from a serious mental illness, and that she was ineffective for not filing a notice of the defense of lack of mental state pursuant to K.S.A. 2020 Supp. 22-5209," and (2) "Spainhour admitted that she was ineffective for not obtaining a second opinion of the viability of a lack of mental state defense." Although Robinson places great weight on Spainhour's admissions, there are no facts to support Spainhour's assertions. Robinson has presented no facts that he actually had a mental disease or defect that prevented him from forming the requisite mental intent to commit first-degree murder. Mental illness, by itself, does not meet the definition of K.S.A. 2020 Supp. 21-5209. In addition, Spainhour provides no facts supporting the theory that a second opinion would have produced helpful information. Robinson presents no information that a second expert would have been helpful or testified that he

15

lacked the required mental state to commit the crime. Merely identifying the fact that Spainhour would be a potential witness to testify that she was ineffective is not enough without supporting facts as to how she was ineffective. With no facts supporting his assertions, we conclude that Robinson has failed to show that the district court erred in denying his request for an evidentiary hearing.

In addition, standing alone, trial counsel's admissions that she was ineffective do not show ineffective assistance of counsel. Judging whether counsel is ineffective is an objective standard and largely a matter of law. *Harrington v. Richter*, 562 U.S. 86, 109-10, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("*Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). Consequently, Spainhour's claim that she was ineffective, without facts supporting such a basis, bear little weight in our analysis. See, e.g., *Newland v. Hall*, 527 F.3d 1162, 1208 (11th Cir. 2008); *Chandler v. United States*, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000); *Marrero v. Horn*, 505 Fed. App'x. 174, 181 (3d Cir. 2012) (unpublished opinion).

The record also provides nothing to show that the defense of lack of mental state would have any merit. Spainhour cannot be ineffective for failing to pursue a meritless defense. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 499, 486 P.3d 1216 (2021) (showing prejudice requires proving a different result would have occurred). Without such a showing, we cannot conclude that she was ineffective on this basis.

On appeal, Robinson limited his argument that his K.S.A. 60-1507 motion warranted an evidentiary hearing to the two issues already addressed: trial counsel's failure to seek another competency evaluation and trial counsel's failure to pursue a mental disease or defect defense. Thus, we hold the other issues presented in this K.S.A. 60-1507 motion are deemed waived. See *State v. Boysaw*, 309 Kan. 526, 537, 439 P.3d 909 (2019) (when a party fails to adequately brief an issue, it is waived.).

We conclude that Robinson's K.S.A. 60-1507 motion did not warrant an evidentiary hearing. Robinson offers only conclusory allegations and no facts to support any of his claims, and—where his claims could be viable 60-1507 claims at all—no basis can be found in the record. A K.S.A. 60-1507 motion must be supported with specific facts that, if true, would entitle the movant to relief on his or her claims. See *Skaggs*, 59 Kan. App. 2d at 130-31. Robinson provides no facts to support any of his conclusory allegations. Even liberally construed, Robinson's motion does not entitle him to an evidentiary hearing.

Thus, we affirm the district court's summary denial of Robinson's K.S.A. 60-1507 motion.

Affirmed.